**CLARKSON LAW FIRM, P.C.**
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Mark Richards (SBN 321252)
*mrichards@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MEGAN IUDICE, on behalf of herself and all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>ANKER INNOVATIONS LIMITED, and FANTASIA TRADING, LLC,<br><br>Defendants. | Case No.   5:25-cv-1483<br><br>**CLASS ACTION COMPLAINT**<br><br><br>DEMAND FOR JURY TRIAL |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Plaintiff Megan Iudice ("Plaintiff"), on behalf of herself and a class of other similarly situated individuals (collectively, "the Class"), complain of and allege the following causes of action against Defendants Anker Innovations Limited ("Anker Innovations") and Fantasia Trading LLC ("Fantasia,") (collectively, "Anker or "Defendants").

## I.    INTRODUCTION

1.    Lithium-ion battery fires have become a leading cause of property damage and personal injury in recent years. Amid this growing concern, Anker has built a multi-billion-dollar business by unequivocally promising that its "MultiProtect" technology—incorporated into its line of lithium-ion portable chargers and power banks ("Class Products")—eliminates risk.

2.    "MultiProtect" is at the core of Anker's marketing strategy. Anker advertises the trademarked safety system as providing "complete safety" and "complete protection" against the catastrophic thermal events that otherwise plague lithium-ion batteries. These affirmative claims have induced millions of consumers, including Plaintiff, to pay premium prices for what they believed was the solution to fire and other risk.

3.    What Anker's unequivocal promise fails to acknowledge, however, is that MultiProtect cannot detect, much less prevent, thermal events resulting from the failure of the Class Products' internal components. Instead, the Class Products can explode or catch fire regardless of the MultiProtect system. Plaintiff unfortunately discovered this reality when her Anker power bank exploded and caught fire in her home causing thousands of dollars of property damage.

4.    Consumers nationwide have likewise been duped by Defendant's false advertising. As it turns out, MultiProtect is merely an external circuit protection system that monitors electrical parameters at the device interface. It therefore **cannot detect or prevent** thermal runaway caused by internal component failures—**the**

**primary cause of most lithium-ion battery fires**. This fundamental limitation renders Anker's "complete safety" claims false and dangerously misleading to the millions of consumers who pay more to protect themselves and their families. No reasonable consumer would expect the complete safety solution to be ineffective against the number one cause of battery fires.

5.    Anker is well aware of the Products' inability to deliver the safety it promises. There have been multiple product recalls attributed to fires—the very hazard MultiProtect is marketed to prevent—and countless incidents like Plaintiff's demonstrating the system's inability to stop thermal runaway. Anker continues, however, to promote the Class Products using the same unequivocal safety claims.

6.    Through this putative class action, Plaintiff seeks to hold Anker accountable for these deceptive business practices, secure compensation for himself and similarly situated consumers who paid premium prices for illusory safety features, and enjoin Anker from continuing to dupe (and endanger) consumers with products that explode into flames without warning, despite being equipped with the MultiProtect "complete safety" system.

## II.    JURISDICTION

### A.    Subject Matter Jurisdiction

7.    This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (d) because the proposed Class consists of 100 or more members, the amount in controversy for the Class exceeds $5,000,000 and Plaintiff is a citizen of a different state than Defendants.

### B.    Personal Jurisdiction

8.    This Court has specific personal jurisdiction over Defendants pursuant to California's long-arm statute, Cal. Civ. Proc. Code § 410.10, and the Due Process Clause of the Fourteenth Amendment.

Class Action Complaint

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

*As to Defendant Fantasia Trading LLC*

9.     This Court has specific personal jurisdiction over Defendant Fantasia Trading LLC because it maintains its principal place of business and headquarters in Ontario, California, systematically conducts substantial business throughout California, and has purposefully availed itself of the benefits and protections of California law. On information and belief, all managers and members of Fantasia are citizens of the State of California. Fantasia operates as the exclusive U.S. distributor of the Class Products, processes all U.S. internet sales through its California operations, maintains the Anker website, and directs nationwide marketing and advertising campaigns from California. Fantasia has intentionally and purposefully placed Class Products into the stream of commerce within California and throughout the United States with the expectation and intent that they would be purchased by California consumers.

*As to Defendant Anker Innovations Limited*

10.    This Court has specific personal jurisdiction over Defendant Anker Innovations Limited because it has purposefully availed itself of the benefits and protections of California by: (1) establishing Fantasia Trading LLC as its wholly-owned subsidiary and exclusive U.S. distributor operating from California; (2) conducting substantial import operations through California's major ports at Los Angeles and Long Beach for distribution of Class Products throughout the United States; (3) directing and controlling the marketing, advertising, and sale of Class Products from California through its alter ego Fantasia; (4) maintaining active marketing operations directed from California through personnel including the Head of Marketing for North America operating from the Los Angeles Metropolitan Area; (5) partnering with California-based marketing agencies to promote Class Products; and (6) intentionally placing Class Products into the stream of commerce within California with the expectation they would be purchased by California consumers.

The false and misleading representations about MultiProtect that form the basis of this action were created, authorized, and disseminated from California.

## C. General Jurisdiction

### *As to Defendant Fantasia Trading LLC*

11.    This Court has general jurisdiction over Defendant Fantasia Trading LLC because it is essentially "at home" in California. Fantasia maintains its principal place of business and headquarters in Ontario, California, conducts all U.S. operations for Anker products from this state. Fantasia's contacts with California are so continuous and systematic as to render it essentially at home in this forum.

### *As to Defendant Anker Innovations Limited*

12.    This Court has general jurisdiction over Defendant Anker Innovations Limited based on the alter ego doctrine.

13.    **Unity of Ownership & Control Between Defendants:** There exists a unity of ownership and control between Anker Innovations and its wholly-owned subsidiary Fantasia such that any separateness between them has ceased. The companies share personnel and management, with individuals serving both entities in overlapping capacities. They operate under a unified brand identity, with Fantasia holding the copyright to all Anker website content while selling Anker Innovations' products. Anker Innovations exercises pervasive control over Fantasia's California operations, directing all aspects of marketing, distribution, and customer service from the state. Federal regulatory filings demonstrate this unity, with Fantasia serving as Anker Innovations' designated agent for FCC compliance across hundreds of equipment authorizations. Through its alter ego Fantasia, Anker Innovations has established such systematic and continuous contacts with California as to be essentially at home in this state.

14.    The exercise of jurisdiction over both Defendants comport with fair play and substantial justice. Defendants have purposefully directed their activities at

California residents through extensive marketing and sales operations. California has a strong interest in adjudicating disputes involving products that allegedly pose safety risks to its residents. The claims arise directly from Defendants' California-based activities, including the creation and dissemination of the challenged MultiProtect advertising and representations.

### III.  VENUE

15.    Venue as to Defendants is proper in this judicial district under 28 U.S.C § 1391 because Defendants sells a substantial number of automobiles in this District, has dealerships in this District, and many of Anker's acts complained of herein occurred within this District, including the marketing, advertising, sale, and distribution of the Class Products.

### IV.  PARTIES

**Plaintiff Megan Iudice**

16.    Plaintiff Megan Iudice is a citizen and resident of Idaho Falls, Idaho.

17.    On September 6, 2022, Plaintiff Iudice purchased an Anker PowerCore III Sense 20K portable battery charger, (hereinafter "the Power Bank") from Best Buy, an authorized retailer of Anker products located in Idaho Falls, Idaho.

18.    Plaintiff Iudice purchased the Power Bank for personal, family, and household purposes.

19.    On January 16, 2025, while Plaintiff was charging the Power Bank in her residential bathroom under normal operating conditions, she heard a loud explosion emanating from the device. Upon immediate investigation, Plaintiff discovered that the Power Bank had caught fire and was emitting flames and toxic smoke. Plaintiff immediately called emergency services. The local fire department promptly responded to the scene and worked to extinguish the blaze. Despite the firefighters' swift response and diligent efforts to contain the fire, the thermal event resulted in substantial property damage to Plaintiff's bathroom.

20.   As a direct result of the incident, Plaintiff required emergency medical care for smoke inhalation she suffered while initially attempting to extinguish the fire before evacuating the premises.

21.   The fire and explosion incident was unexpected and came as a complete surprise to Plaintiff because Anker had specifically and prominently advertised its proprietary MultiProtect safety system as providing "complete safety" and "advanced protection" to prevent against overheating, fire, and explosion risks commonly associated with lithium-ion batteries that lack such comprehensive safety systems.

22.   In reliance upon Anker's express marketing representations, advertising materials, and safety assurances regarding the MultiProtect system's protective capabilities, Plaintiff specifically selected and purchased the Power Bank, paying a premium price for the device and choosing it over numerous less expensive alternative portable battery products available in the marketplace.

23.   Prior to purchasing the Power Bank, Plaintiff Iudice visited Anker's official website to review the various features, benefits, specifications, and safety attributes of the device. Plaintiff relied upon the website's express representations and warranties regarding the MultiProtect system's safety features when making her purchasing decision. None of the website's advertisements, marketing materials, or product descriptions disclosed any limitations or deficiencies in the MultiProtect system's ability to prevent thermal events.

24.   Additionally, prior to purchasing the Power Bank, Plaintiff reviewed advertisements and marketing materials prominently displayed on the product packaging that specifically touted the comprehensive safety features of Anker's MultiProtect system, including express representations that the system would prevent the product from catching fire, overheating, short-circuiting, and exploding under normal use conditions.

25.    Neither Anker nor any of its agents, representatives, authorized retailers, advertisements, marketing materials, or product disclosures informed Plaintiff that the MultiProtect system was incapable of preventing thermal runaway events, battery explosions, fires, or other dangerous malfunctions under normal use conditions, or that such risks remained despite the presence of the MultiProtect system.

26.    Had Plaintiff Iudice been aware of the MultiProtect system and its limited ability to prevent thermal events, battery explosions, and fires, she would not have purchased the Power Bank or, alternatively, would have paid substantially less for a product with such significant safety deficiencies.

27.    As a direct and proximate result of Anker's material omissions and misrepresentations regarding the MultiProtect system technology and the Power Bank's safety features, Plaintiff Iudice has suffered ascertainable losses, including but not limited to overpayment for the Power Bank and/or lost benefits of the bargain.

**Defendant Anker Innovations Ltd.**

28.    Defendant Anker Innovations Ltd. ("Anker Innovations") is a Hong Kong company with its principal place of business at Room 1318-19, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong SAR, People's Republic of China. Anker Innovations designs and manufactures Class Products for export and sale throughout the world, including throughout the United States and in California and Idaho.

29.    In coordination with and at the direction of Fantasia Trading LLC, Anker Innovations designed, manufactured, sold, advertised, and distributed the Class Products.

30.    Anker Innovations is the parent of, wholly owns, and controlled and managed, Fantasia Trading LLC, among other things, the marketing, advertising, warranting, sale, and distribution of the Class Products throughout the United States.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

7

31. Defendants Anker Innovations and Fantasia Trading LLC share a unity of ownership, as discussed in more detail in paragraphs 74-82. Adherence to the fiction of the separate existence of Defendants Anker Innovations and Fantasia Trading LLC would, under the circumstances set forth in this complaint, sanction fraud, or promote injustice.

**Defendant Fantasia Trading LLC**

32. Defendant Fantasia Trading LLC is a Delaware limited liability company with its principal place of business and headquarters located in Ontario, California.

33. In coordination with and at the direction of Anker Innovations, Fantasia designed, manufactured, sold, advertised, and distributed the Class Products.

34. Fantasia serves as the exclusive distributor of the Class Products in the United States and is the entity that created, authorized, and controlled the use of the marketing, advertising, and branding of the Class Products in the United States, including all representations regarding the Class Products, including those related to MultiProtect.

35. At the direction and in coordination with Anker Innovations, Fantasia is responsible for conducting all U.S.-based customer service functions for Anker products sold in the United States, including servicing customer inquiries, processing product warranties, handling warranty claims, and providing technical support to U.S. consumers.

36. Furthermore, Fantasia handles all financial transactions for U.S. internet purchasers of Anker products and processes payments, refunds, and other financial aspects of U.S. sales, including the Class Products.

37. Fantasia is also responsible for conducting and administering U.S. product recalls of Anker products, coordinating recall efforts with U.S. retailers, and communicating directly with U.S. regulatory agencies, including the Consumer

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Product Safety Commission ("CPSC"), regarding product defects, safety issues, and recall procedures for Anker products sold in the United States.

38.    Fantasia in coordination with and at the direction of Anker Innovations, sells and has sold its products, including the Class Products, directly to consumers through its website, https://www.anker.com, and through a comprehensive network of authorized retailers including Amazon, Best Buy, Target, Costco, Walmart, Home Depot, and numerous other major retail chains throughout the United States.

39.    In coordination with and at the direction of Anker Innovations, Fantasia created, authorized, and controlled the used the false, misleading, deceptive, and unfair advertising and representations alleged herein to market the Class Products. Anker and its agents promoted, marketed, and sold the Class Products at issue throughout the United States and, in particular, within this judicial district.

40.    On information and belief, the unfair, unlawful, deceptive, and misleading representations and omissions regarding MultiProtect and the Class Products were prepared, authorized, ratified, and/or approved by Defendants and their agents, and were created and disseminated from the State of California by Defendants and their agents to deceive and mislead consumers in the State of California, the State of Idaho, and consumers throughout the United States into purchasing the Class Products.

## V.    FACTUAL ALLEGATIONS

### A.    Background on Lithium-Ion Battery Technology and Safety Risks

41.    All lithium-ion batteries operate through the same fundamental mechanism: cells clustered within battery casings facilitate the movement of lithium ions between electrodes, generating electric current for consumer devices.

42.    The primary safety risk from lithium-ion batteries occurs during thermal runaway—a dangerous chain reaction where a battery cell generates heat faster than

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

it can dissipate it, causing temperatures to rise uncontrollably.[1] This self-perpetuating cycle begins when initial heat generation triggers chemical reactions that produce additional heat, which accelerates further reactions in a snowball effect that can result in fire or explosion.[2]



43. Fire departments in major metropolitan areas have documented a dramatic surge in battery-related incidents. New York City and San Francisco alone have recorded over 660 lithium-ion battery fires since 2019.[3] In New York City specifically, these incidents caused 12 deaths and more than 260 injuries between 2021 and early 2023, with lithium-ion batteries becoming the leading cause of fire deaths in the city.[4]

44. These battery fires present unique dangers that distinguish them from conventional fires. As FDNY Commissioner Laura Kavanagh observed, "It is not a

---

[1] Thermal Runaway, SCIENCEDIRECT, https://www.sciencedirect.com/topics/chemistry/thermal-runaway (last visited May 30, 2025).

[2] *Id.*

[3] Adam Yamaguchi, *Lithium-ion Battery Fires from Electric Cars, Bikes and Scooters Are on the Rise. Are Firefighters Ready?*, CBS NEWS (Mar. 3, 2023), https://www.cbsnews.com/news/lithium-ion-battery-fires-electric-cars-bikes-scooters-firefighters/ (last visited June 13, 2025).

[4] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

slow burn; there's not a small amount of fire, it literally explodes," making them "particularly dangerous" and extremely difficult to extinguish.[5]

45. The escalating frequency and severity of lithium-ion battery incidents have prompted government agencies and transportation companies to implement restrictive policies. The New York City Housing Authority has proposed policies prohibiting e-bikes and their batteries from city-owned buildings entirely—a response justified by the batteries' role as the leading cause of fire deaths in New York City.[6]

46. Aviation safety concerns have intensified as more than 600 in-flight lithium battery incidents involving smoke, fire, or extreme heat have been recorded by the US Federal Aviation Administration (FAA) in the past two decades, with 22 verified incidents occurring in 2025 alone.[7] These incidents have prompted airlines worldwide to implement strict limitations on battery size and usage during flights.

47. For example, Southwest Airlines recently announced a "first-in-industry" policy requiring passengers to keep portable chargers visible during use on flights, effective May 28, 2025.[8] The airline's new rules specifically state that "using portable charging devices while stored in a bag or overhead bin will no longer be permitted"

---

[5] Press Release, *N.Y.C. Fire Dep't, FDNY Warns that Lithium-ion Batteries Are Now a Leading Cause of Fires and Fire Deaths in New York City* (Feb. 7, 2023), https://www.nyc.gov/site/fdny/news/Y40203/fdny-warns-lithium-ion-batteries-now-leading-cause-fires-fire-deaths-new-york/ (last visited  June 13, 2025).

[6] *NYCHA Explains Newly Plugged-In Policy on E-Bikes and Scooters*, CITY LIMITS (2024), https://citylimits.org/nycha-explains-newly-plugged-in-policy-on-e-bikes-and-scooters/ (last visited Jun 13, 2025).

[7] Lithium Battery Incidents, FED. AVIATION ADMIN., https://www.faa.gov/hazmat/resources/lithium_batteries/incidents (last visited June 13, 2025).

[8] Holly Yan, Southwest Airlines Places New Restrictions on Portable Chargers in Carry-on, CNN (May 22, 2025), https://www.cnn.com/2025/05/22/travel/southwest-airlines-tightens-rules-visible-portable-chargers/ (last visited June 13, 2025).

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

and that portable chargers "must be out of any baggage and remain in plain sight" when used during flight.[9]

48. Southwest's policy follows similar restrictions implemented by Asian carriers after a portable power bank with a lithium battery was identified as a possible source of a fire that engulfed an Air Busan plane in January 2025.[10] South Korea subsequently introduced nationwide restrictions banning passengers from storing power banks in overhead cabins, while Thai Airways prohibits power bank use entirely and Singapore Airlines has banned in-flight charging of these devices.[11]

49. As lithium-ion batteries become increasingly integrated into everyday consumer products and transportation systems, the mounting safety incidents and regulatory responses reflect growing recognition of the significant risks these devices pose to public safety, prompting enhanced safety measures and evolving industry standards.

## B. Anker's Affirmative Misrepresentations Regarding MultiProtect

50. Anker developed and introduced MultiProtect as a comprehensive safety technology system in response to growing concerns about lithium-ion battery hazards in consumer charging devices. MultiProtect is Anker's exclusive 11-point suite of "advanced safety" and protection systems designed to address the many risks associated with generic rapid chargers—overheating, fires, and even explosions.[12]

---

[9] *Id.*

[10] *South Korea Says Battery Pack Is Possible Cause of Air Busan Fire*, REUTERS (Mar. 14, 2025), https://www.reuters.com/world/asia-pacific/south-korea-probe-finds-battery-pack-possible-source-air-busan-fire-2025-03-14/ (last visited June 13, 2025).

[11] South Korea to Limit Power Banks on Flights Following Plane Fire, REUTERS (Feb. 13, 2025), https://www.reuters.com/world/asia-pacific/south-korea-limit-power-banks-flights-following-plane-fire-2025-02-13/ (last visited June 13, 2025).

[12] MultiProtect Safety Technology, ANKER, https://us.anker.com/pages/multi-protect (last visited May 27, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

51.   On March 10, 2015, Anker filed for trademark protection of "MULTIPROTECT" with the United States Patent and Trademark Office, which was officially registered on June 7, 2016, with registration number 4974427.[13]

52.   By July 2015, Anker was actively promoting MultiProtect as "a set of advanced safety features" that, combined with Anker's rigorous product testing process, "guarantee complete safety for devices and their users."[14]

53.   Anker's marketing of MultiProtect specifically targets consumer fears regarding lithium-ion battery safety, capitalizing on widespread media coverage of battery fires to position its products as exceptionally safe alternatives worth a premium price. The company emphasizes that MultiProtect "ensures complete safety for all your devices and most importantly, you" and provides "complete protection while charging" with "safeguards against overheating, foreign objects, and more."[15] Anker's marketing materials prominently feature MultiProtect as an "exclusive 11-point safety suite" specifically designed, advertised, and marketed to protect devices from overheating, overcharging, and overcurrent issues.[16]

54.   To increase profits and gain an unfair advantage over its lawfully acting competitors, Anker specifically markets and advertises to consumers that its MultiProtect system ensures complete safety for the Class Products with persuasive

---

[13]   MULTIPROTECT, Registration No. 4,974,427 (registered June 7, 2016), https://trademarks.justia.com/865/59/multiprotect-86559179.html./ (last visited May 30, 2025)

[14] Press Release, Anker Selects New Age Electronics to Launch Its Retail Product Offering, GLOBENEWSWIRE (July 22, 2015), https://www.globenewswire.com/news-release/2015/07/22/754234/35854/en/Anker-Selects-New-Age-Electronics-to-Launch-Its-Retail-Product-Offering.html./ (last visited June 13, 2025).

[15] Multi-Protect, ANKER, https://us.anker.com/pages/multi-protect/ (last visited June 13, 2025).

[16] *Id.*

Class Action Complaint

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

and widespread claims prominently featured on product packaging, Anker's website, and on its authorized retailers' websites, including but not limited to the following:

- "MultiProtect ensures **complete safety** for all your devices and most importantly, you."
- "Anker's exclusive MultiProtect safety technology ensures **complete protection** while charging."
- "Anker's MultiProtect safety system provides **superior protection** for you and your devices."
- "Anker's exclusive MultiProtect safety technology provides **complete protection** for you and your devices."
- "Anker's MultiProtect safety system and UL certification ensures **complete protection** for you and your devices."
- "With features like the MultiProtect safety system, which includes temperature control, foreign object detection, and radiation shielding, **you can charge your devices confidently, knowing they are protected from overcharging, overheating, and more**."



Class Action Complaint



**MultiProtect**

MultiProtect is Anker's exclusive 11-point suite of advanced safety and protection systems. There are many risks associated with other generic rapid chargers—overheating, fires, even explosions. MultiProtect ensures complete safety for all your devices and most importantly, you.

55.    Anker's website and product packaging specifically represented MultiProtect as capable of preventing the very thermal events that Plaintiff and many consumers have experienced, claiming the system provides "complete safety" and "complete protection" against thermal events and "eliminates safety concerns" associated with battery products. [17]

56.    Anker has leveraged its advertising and marketing of MultiProtect's "complete safety" claims as a key differentiator in the competitive external battery and battery charger market, distinguishing itself from what it calls "other generic rapid chargers." Based on MultiProtect's promised safety features, Plaintiff and consumers have paid and continue to pay a price premium for the Class Products.

**C.    The Gap Between Anker's "Complete Safety and Protection" Advertisements and Reality**

57.    Contrary to Anker's representations of "complete safety" and "complete protection," MultiProtect is merely an external circuit protection system that operates at the charger/device interface level. While it may prevent common electrical issues like external short circuits or input overcharging in properly manufactured batteries,

---

[17] *Id.*

Class Action Complaint

MultiProtect cannot monitor conditions within individual battery cells where catastrophic failures actually originate.

58.    This fundamental limitation means MultiProtect can only regulate electrical parameters such as voltage and current, but cannot detect the internal physical defects—microscopic metal contaminants, separator defects, poor cell construction, or damaged battery cells—that are the most common causes of lithium-ion battery fires. Once thermal runaway initiates within a defective cell, the chemical reaction becomes self-sustaining and generates its own oxygen at the cellular level, beyond the reach of any external monitoring circuits. This explains why the MultiProtect system completely failed to prevent the explosion and fire in Plaintiff's bathroom, directly contradicting Anker's "complete safety" claims.

59.    Anker's own recall notices further expose the hollowness of advertising of MultiProtect—the company has attributed fires and explosions to "manufacturing defects," the very hazards consumers paid MultiProtect to prevent.

60.    Anker has manufactured, marketed, sold, and distributed power banks with defective lithium-ion batteries that repeatedly overheat, catch fire, and explode, causing burn injuries and property damage to consumers.

61.    In February 2023, Anker recalled its 535 Power Bank (model A1366) after the product was cited as the "most probable cause" of a house fire in Maryland, prompting investigation that revealed Anker's suppliers had misplaced NTC thermistors—the temperature sensors at the heart of MultiProtect's safety system— were pressing against and damaging battery cells, causing the exact overheating they were meant to prevent.[18]

---

[18] U.S. Consumer Prod. Safety Comm'n, *Fantasia Trading Recalls Anker Power Banks Due to Fire Hazard*, CSPC.gov (2023), https://www.cpsc.gov/Recalls/2023/Fantasia-Trading-Recalls-Anker-Power-Banks-Due-to-Fire-Hazard/ (last visited June 13, 2025).

Class Action Complaint

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

62.    Then, in June 2024, Anker initiated a recall for the Anker 321 Power Bank (PowerCore 5K, Black) manufactured over a 15-month period from March 2023 to June 2024, citing manufacturing defects causing fire safety risks.[19]

63.    In October 2024, Anker yet again recalled several Class Products after 28 separate reported incidents of batteries overheating, exploding, and catching fire, resulting in two consumers suffering painful first and second-degree burns to their hands.[20]

64.    Most recently, on June 12, 2025, the Anker announced the recall of approximately 1,158,000 Anker PowerCore 10000 power banks (Model A1263) manufactured between January 2016 and October 2019.[21] This recall was prompted by 19 reports of fires and explosions that resulted in two consumers suffering burn injuries and over $60,700 in property damage. The CPSC determined that the lithium-ion battery in these power banks can overheat, posing fire and burn hazards to consumers.

65.    Despite these recalls and incidents like Plaintiff's explosion and fire, Anker continues to falsely and misleadingly advertise MultiProtect as a comprehensive safeguard against thermal events and fires in its products, repeating the same "complete safety" and comprehensive protection against fires and

---

[19]  Anker 321 Power Bank (PowerCore 5K, Black) A1112 Recall, ANKER, https://www.anker.com/a1112-recall / (last visited June 13, 2025).

[20]  U.S. Consumer Prod. Safety Comm'n, *Anker Power Banks Recalled Due to Fire and Burn Hazards; Manufactured by Anker Innovations*, CPSC.GOV (2024), https://www.cpsc.gov/Recalls/2025/Anker-Power-Banks-Recalled-Due-to-Fire-and-Burn-Hazards-Manufactured-by-Anker-Innovations/ (last visited June 13, 2025).

[21]  U.S. Consumer Product Safety Comm'n, *More than One Million Anker Power Banks Recalled Due to Fire and Burn Hazards; Manufactured by Anker Innovations*, CPSC.GOV (2025), https://www.cpsc.gov/Recalls/2025/More-than-One-Million-Anker-Power-Banks-Recalled-Due-to-Fire-and-Burn-Hazards-Manufactured-by-Anker-Innovations/ (Last visited June 12, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

explosions in its advertising of the Class Products – capitalizing on Class Members' desire for lithium-ion products safe from fire risk.

66.    The recalls also fail to address the full scope of harm Plaintiffs and other consumers suffered, as they do not cover all models containing the "complete safety" misrepresentation which continue to carry the fire risk. Nor do they compensate consumers and Plaintiff for the financial losses incurred from paying a premium for products they would not have purchased had they known that the safety and protection representations were false.

**D.    Anker Knowingly Omits Material Information Regarding the Limitations of MultiProtect**

67.    Despite marketing MultiProtect as providing "complete safety" and comprehensive protection, Anker failed to disclose the critical limitation: the system cannot detect or prevent thermal events caused by internal components failures, including failures of the battery cells themselves. This material omission directly contradicted Anker's affirmative safety claims and resulted in the explosion and fire of Plaintiff's Power Bank – and the injuries and damages that followed.

68.    Anker had a duty to disclose the limitations of the MultiProtect system because:

a) The omitted information directly concerned consumer safety and the risk of fires, explosions, and physical injury;

b) Anker made partial representations about MultiProtect's safety capabilities, which were misleading without full disclosure of its key limitations;

c) Anker had superior and exclusive knowledge of the system's technical capabilities and limitations; and

d) Anker knew that consumers lacked the technical expertise and access to technical specifications – to understand and uncover these limitations themselves. Indeed, Anker does not make the technical specifications of its

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

proprietary technology or the detailed operational parameters of the Class Products publicly available and customers who purchase the Class Products lack the technical sophistication to understand and discover the true level of safety and protection that Anker's MultiProtect systems provides.

69.    Anker knew or should have known since its initial marketing and release of MultiProtect in 2015 that it cannot prevent thermal runaway once initiated within a defective lithium-ion cell. The inherent limitations of circuit-level protection system like MultiProtect in detecting or stopping such internal failures are well-established in the lithium-ion battery industry. These types of failures – particularly within battery cells – are the leading cause of battery fires, and MultiProtect cannot reliably prevent them.

70.    Anker's engineering teams, tasked with developing the MultiProtect system, were certainly aware of these studies and possessed the technical expertise to understand these fundamental limitations of MultiProtect.

71.    Anker's also had actual knowledge of the limitations of MultiProtect as result of its attribution of fires in recalled products to "manufacturing issues," which have further demonstrated an inability of its MultiProtect system to prevent thermal runway and fires that occurred as a result of defective battery cells.

72.    Despite its actual knowledge of MultiProtect's limitations, Anker has continued to market MultiProtect using the same deceptive "complete safety" claims even after initiating multiple recalls for products equipped with this technology and even after incidents like the explosion and fire of Plaintiff's Power Bank, demonstrating a willful pattern of fraud by omission and unfair and deceptive business practices.

73.    By highlighting MultiProtect as providing "complete safety" against battery fires while concealing its critical limitations, Anker created a false impression that MultiProtect provided comprehensive protection against all forms of battery

Class Action Complaint

failure, when in reality it offered only limited protection against certain electrical issues in properly manufactured batteries.

**E.    Anker Innovation's Business Operations in California**

74.    Anker Innovations business operations reveal purposeful and substantial contacts with the state of California and this District.

75.    Anker Innovations was founded in California, establishing the company's roots and initial business operations in the state. Despite moving manufacturing facilities overseas, Anker Innovations has maintained substantial presence in California through ongoing business operations, marketing activities, and corporate relationships.

76.    The lack of corporate separateness between Anker Innovations and Fantasia is demonstrated through multiple factors evidencing their operation as a single enterprise. The activities of the two companies are indistinguishable in practice.

**1.    Website Operations**

77.    Defendants' unified identity is evident from Anker's website. The copyright notice at the bottom of every page on anker.com states "© Fantasia Trading LLC 2025 200923810277," identifying Fantasia as the copyright holder for all Anker website content, including pages marketing and selling the Class Products.[22]

78.    Moreover, when consumers order products directly from Anker's website, including the Class Products, credit card charges appear from "Fantasia Trading," demonstrating that Fantasia processes transactions for Anker Limited's products sold in the U.S. through its website.

**2.    Shared Personnel and Management**

79.    The companies share personnel who serve both entities. Meng Yang serves as both the Managing Member of Fantasia and the CEO of Anker Innovations,

---

[22] ANKER, https://www.anker.com/ (last visited June 13, 2025).

Class Action Complaint

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

while Louis Qi simultaneously serves as Manager/General Manager for Anker Innovations and as Compliance Manager for Fantasia.

### 3. FCC Agent Designation and Regulatory Filings

80. Federal Communications Commission records establish Fantasia as Anker Innovations' designated agent for service of process, maintaining a physical presence at 5350 Ontario Mills Pkwy, Suite 100, Ontario, California 91764-5137. This relationship is formalized under FCC Rule 47 CFR §2.911(d)(7).

81. Anker Innovations has filed hundreds, if not thousands, of FCC equipment authorization applications designating Fantasia as its U.S. agent for service of process. including for the Class Products. These filings consistently list Louis Qi as both the applicant on behalf of Anker Innovations and as the designated agent for Fantasia, demonstrating unified control.[23] This arrangement demonstrates that Fantasia operates as an alter ego or mere instrumentality of Anker Innovations rather than as an independent entity.

### 4. Trademark Ownership

82. Fantasia was the original registrant of the ANKER trademark, which later transferred to Anker Technology Co., Limited, and then to Anker Innovations Limited.

### 5. Anker's Marketing and Advertising of the Class Products Emanated From California

83. Anker Innovations and Fantasia jointly maintain active marketing operations directed from California. For example, Lisa Burkhart serves as Head of Marketing for North America from the Los Angeles Metropolitan Area, overseeing

---

[23] *See, e.g.*, Exhibit 1, Anker Innovation's Ltd.'s USA Agent for Service of Process Filing (Feb. 6, 2023).

Class Action Complaint

marketing strategy including for the Class Products.[24] Ashley Cheng, North America Regional Marketing Manager, operates from San Jose, California, managing omni-channel marketing strategies.[25]

## VI.  TOLLING OF STATUTE OF LIMITATIONS

68.    Defendants' knowing and active concealment and denial of the facts alleged act to toll any applicable statute(s) of limitations. Plaintiff and other Class members could not have reasonably discovered the falsity of Defendants' representations until shortly before commencing this class-action litigation.

70.    All applicable statutes of limitation have also been tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein – Defendants had actual knowledge of the limitations of MultiProtect but refused to disclose such limitations to Plaintiff and consumers.

74.    Based on the knowing, active and ongoing fraudulent conduct alleged herein, Defendants are also estopped from relying on any statutes of limitation in defense of this action.

84.    Defendants have, and continues to have, a duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the Class Products.

## VII.  CLASS ACTION ALLEGATIONS

85.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following class:

**Nationwide Class:**

All persons or entities in the United States who purchased a Class Product in the United States.

---

[24] Lisa Burkhart, LinkedIn Profile, LINKEDIN, https://www.linkedin.com/in/lisa-burkhart-0719a04/ (last visited June 13, 2025).
[25] Ashley Cheng, LinkedIn Profile, LINKEDIN, https://www.linkedin.com/in/ashleycheng/ (last visited June 13, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

86.    In the alternative to the Nationwide class, Plaintiff proposes the following state specific sub class:

> **Idaho Class:**
>
> All persons or entities who purchased a Class Product in the state of Idaho.

87.    Excluded from the Classes is Anker, its affiliates, employees, officers and directors, persons or entities that purchased the Class Products for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition.

88.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

89.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

90.    **Numerosity:** The members of the Class are so numerous that their individual joinder is impracticable. Hundreds of thousands of Class Products were sold across the United States. The number and identity of Class members can be obtained through business records regularly maintained by Defendants, its employees, and agents and state agencies. Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

91.    **Commonality and Predominance:** There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members. The common legal and factual issues include, but are not limited to:

a)  Whether Defendants engaged in the conduct alleged herein;

b) Whether Defendants advertised, marketed, distributed, sold, or otherwise placed Class Products;

c) Whether Defendants' advertising and marketing of the Class Products was deceptive, false, fraudulent, or misleading;

d) Whether Plaintiff and other Class members have been harmed by the fraud alleged herein;

e) Whether Defendants were unjustly enriched by its deceptive practices; and

f) Whether Plaintiff and members of the Class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

92. **Typicality:** Plaintiff's claims are typical of the claims of each member of the Class. Plaintiff, like all other members of the Class, have sustained damages arising from Defendants' conduct as alleged herein. Plaintiff and the members of the Class were and are similarly or identically harmed by Defendants' unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct.

93. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between Plaintiff's claims and those of the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

94. **Superiority:** A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiff and the Class. The injury suffered by each individual Class member is small when compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Anker's conduct. It would be virtually impossible for Class members

Class Action Complaint

on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Individual Class members can be readily identified and notified based on, *inter alia*, the Class Products' product identification numbers, warranty claims, and database of complaints submitted to Defendants. Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Anker's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

## VIII. CAUSES OF ACTION

### COUNT ONE

**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**

**(Cal. Civ. Code § 1750, et seq.)**

**(On behalf of the Nationwide Class, in the Alternative, the Idaho Class)**

95.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

96.    Plaintiff brings this claim against Defendants on behalf of herself and members of the of the Nationwide Class or, in the alternative, the Idaho Class.

97.    Defendants are "persons" as that term is defined in California Civil Code § 1761(c).

98.    Plaintiff and the Nationwide Class members are "consumers" as that term

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

is defined in California Civil Code § 1761(d).

99.    The Class Products are "goods" as defined by the CLRA in California Civil Code § 1761(a) because they are portable battery chargers (tangible chattel) that Plaintiff and the Class purchased primarily for personal purposes.

100.    The purchase of the Class Products by Plaintiff and members of the California Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e), in which Plaintiff and the Class entered to purchase Class Products for personal, family, or household purposes.

101.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, including by falsely representing that the MultiProtect system in the Class Products provides "complete safety" and comprehensive protection against fires, explosions, and thermal events, when Defendants knew or should have known that these representations were false, and by knowingly and intentionally concealing from Plaintiff and Nationwide Class members the true limitations of MultiProtect through the false and misleading advertisements stated herein. These acts and practices violate, at a minimum, the following sections of the CLRA:

- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

- (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

- (a)(9) Advertising goods and services with the intent not to sell them as advertised; and

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

- (a)(14) Representing that a transaction confers or involves rights, remedies or obligations that it does not, or that are prohibited by law.

102. Defendants' unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

103. Defendants knew that the MultiProtect system could not prevent or detect thermal events caused by failure of internal components and could not provide the complete safety protection against thermal events as advertised.

104. Defendants had the duty to Plaintiff and the Nationwide Class members to disclose the limitations of the MultiProtect system because:

a) Defendants were in a superior position to know the true state of facts about the limitations of the MultiProtect system in the Class Products

b) Plaintiff and the Nationwide Class members could not reasonably have been expected to learn or discover that the MultiProtect system was incapable of detecting or preventing thermal events caused by failure of internal components;

c) The limitations of the MultiProtect system concerned the safety of the Class Products; and

d) Defendants made partial representations but suppressed material facts regarding the MultiProtect system's capabilities

105. Whether the MultiProtect system could actually provide the advertised "complete safety" and comprehensive protection against fires and explosions is a fact a reasonable consumer would consider important in selecting a portable battery charger to purchase.

106. When Plaintiff and the Nationwide Class members bought the Class Products for personal, family, or household purposes, they reasonably expected the MultiProtect system would provide the advertised safety and protection.

Class Action Complaint

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

107. Had Plaintiff and the Nationwide Class members known about the limitations of MultiProtect and its true capabilities they would not have purchased the Class Products or would have paid less for them.

108. In failing to disclose the limitations of the MultiProtect system, Defendants have knowingly and intentionally concealed material facts and breached its duty to disclose.

109. Defendants' fraudulent and deceptive business practices proximately caused injuries to Plaintiff and the other Nationwide Class members.

110. Plaintiff provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) on June 13, 2025, and seeks only equitable relief under the CLRA at this time. Should Defendants fail to cure the violation within the 30-day statutory requirement, Plaintiff intends to amend this Complaint to pursue monetary damages under the CLRA.

## COUNT TWO

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (On behalf of the Nationwide Class, in the Alternative, the Idaho Class)

111. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

112. Plaintiff brings this claim against Defendants on behalf of herself and members of the of the Nationwide Class or, in the alternative, the Idaho Class.

113. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, et seq., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

114. Defendants violated section 17500 when it advertised and marketed the Class Products through the unfair, deceptive, and misleading representations regarding the safety capabilities of the MultiProtect system, specifically claiming "complete safety" and comprehensive protection against fires, explosions, and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

thermal events, disseminated to the public through the Class Products' advertising and marketing. These representations were deceptive because the MultiProtect system does not conform to these safety claims, as evidenced by the explosion and fire of Plaintiff's power bank and the multiple recalls of Class Products equipped with the MultiProtect system. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Class Products at premium prices.

115. In making and disseminating the representations alleged herein about the MultiProtect system's safety capabilities, Defendants knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

116. Defendants' representations about the MultiProtect system providing "complete safety" and comprehensive protection as alleged herein were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Class Products at premium prices based on the promised safety features.

117. As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the Nationwide Class suffered actual damages, including the price premium they paid for the Class Products or, alternatively, loss of the benefit of their bargain for their purchases.

118. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Nationwide Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

119. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay premium prices for Class Products with safety features that they were not, in fact, receiving.

Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct— including the risk of fires and explosions—and deliberately failed to avoid misleading consumers, including Plaintiff, about MultiProtect's actual capabilities.

120. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights, including exposing them to the risk of fires and explosions.

121. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented the capabilities of the MultiProtect system and/or concealed material facts about its limitations with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

122. Defendants are liable to Plaintiff and the Nationwide Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and any other relief the court deems proper.

## COUNT THREE

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (On behalf of the Nationwide Class, in the Alternative, the Idaho Class)

123. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

124. Plaintiff brings this claim against Defendants on behalf of herself and members of the of the Nationwide Class or, in the alternative, the Idaho Class.

125. California Business & Professions Code, sections 17200, et seq. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

126. Defendants have engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, including by falsely representing that the MultiProtect system provides "complete safety" and comprehensive protection against fires, explosions, and thermal events, and by knowingly and intentionally omitting from Plaintiff and the California Subclass members that the MultiProtect system cannot detect or prevent thermal events caused by failure of internal components. Defendants should have disclosed this information because it was in a superior position to know the true facts related to the limitations of the MultiProtect system, and Plaintiff and California Subclass members could not have been reasonably expected to learn or discover these true facts.

127. The MultiProtect system's inability to detect or prevent thermal events caused by failure of internal components poses a serious safety risk (especially given Defendant's partial and false representations), triggering Defendants' duty to disclose.

128. Defendants, in its advertising and marketing of the Class Products, made misleading statements and fraudulent omissions regarding the MultiProtect system's safety capabilities despite the fact that the MultiProtect system cannot detect or prevent thermal events caused by failure of internal components, like the underlying battery cells and is not designed or capable of providing the comprehensive safety and protection advertised by Defendants. Instead, the Class Products equipped with the MultiProtect system pose an unreasonable safety hazard, as evidenced by Plaintiff's Power Bank explosion and fire, and the multiple recalls of Class Products

Class Action Complaint

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

equipped with MultiProtect systems. Such claims and omissions appear on the advertising and marketing of the Class Products, which are sold online, at retail stores, and point-of-purchase displays.

129. Defendants' advertising and marketing of the Class Products led to, and continues to lead to, reasonable consumers, including Plaintiff, to believe that the MultiProtect system provides complete safety and comprehensive protection against fires and explosions.

130. Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of Class Products that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

131. Defendants failed to avail themselves of reasonably available, lawful alternatives to further its legitimate business interests.

132. All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

### *"Unfair" Prong*

133. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

134. Defendants' action of misrepresenting the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions and omitting and concealing the MultiProtect system's inability to detect or prevent thermal events caused by failure of internal components does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Class Products commensurate with their reasonable expectations, overpay for the Class Products, receive products with lesser safety standards than what they reasonably expected to receive, and are exposed to increased safety risks including fires and explosions. Consumers cannot avoid any of the injuries caused by Defendants' deceptive advertising and marketing of the Class Products. Accordingly, the injuries caused by Defendants' deceptive advertising and marketing outweigh any benefits.

135. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

136. Here, Defendants' conduct of marketing the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions when the MultiProtect system cannot detect or prevent thermal events caused by failure of internal components, which can lead to fires and explosions poses a risk of serious harm to consumers, as evidenced by Plaintiff's experience and the

Class Action Complaint

multiple recalls. The utility of Defendants' conduct is vastly outweighed by the gravity of harm.

137.  Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

138.  Defendants' advertising and marketing of the Class Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of its unfair conduct. Defendants' misrepresentations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

139.  There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from advertising the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions, or could have disclosed the system's limitations.

140.  All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

### *"Fraudulent" Prong*

141.  The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

142.  Defendants marketed and advertised the Class Products as equipped with a MultiProtect system that provides "complete safety" and comprehensive protection against fires and explosions with the intent to sell the Class Products to consumers, including Plaintiff and the California Subclass. Defendants knew or should have known such representations were deceptive due to the MultiProtect system's inability

to detect or prevent thermal events caused by failure of internal components. Defendants' misrepresentations and omissions are likely to mislead consumers into purchasing the Class Products at premium prices because they are material to the average, ordinary, and reasonable consumer.

143. As alleged herein, the misrepresentations and omissions by Defendants constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

144. Plaintiff and the California Subclass reasonably and detrimentally relied on the material and deceptive representations and omissions to their detriment in that they purchased the Class Products.

145. Defendants have reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendants could have refrained from marketing the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions and/or could have disclosed the MultiProtect system's limitations.

146. All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

### *"Unlawful" Prong*

147. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

148. Defendants' advertising, marketing, and sale of the Class Products, as alleged herein, violates California Civil Code sections 1750, et seq. (the "CLRA") and California Business and Professions Code sections 17500, et seq. (the "FAL") as set forth in the sections regarding those causes of action.

149. Additionally, Defendants' marketing of the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

150. Defendants' conduct in making the deceptive representations and omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

151. Defendants' advertising and marketing of the Class Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of their unlawful conduct.

152. Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from advertising the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions.

153. As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Class Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Class Products, property damage from fires, medical expenses, and any interest that would

Class Action Complaint

have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

154. Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay premium prices for Class Products with safety features that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants was, at all times, aware of the probable dangerous consequences of its conduct—including fires and explosions—and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights, including exposure to fire and explosion risks. Defendants' misconduct is fraudulent as Defendants intentionally misrepresented and/or concealed material facts about the MultiProtect system with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

155. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

continuing to engage, use, or employ its practice of advertising and marketing the MultiProtect system as providing "complete safety" and comprehensive protection against fires and explosions, and an order requiring the inclusion of a disclosure of the MultiProtect system's limitations in detecting and prevent thermal events caused by failure of internal components.

156. **No adequate remedy at law.** Plaintiff and the Class are entitled to equitable and injunctive relief as no adequate remedy at law exists:

- **Injunctive Relief**: Injunctive relief that Plaintiff seeks here is prospective and necessary to prevent future injury – Defendants' ongoing misrepresentations and omissions concerning the unsafe nature of the Class Products equipped with the MultiProtect system. Plaintiff seeks an order enjoining Defendants from advertising and marketing the Class Products with the challenged representations and material omissions about the MultiProtect system's capabilities. Further, a corrective advertising campaign is necessary to dispel the public misperception about the Class Products. Furthermore, public injunction is available under the UCL and will allow prevention of harm to the public in general – a remedy that damages cannot provide.

- **Broader statutes of limitations**: The statutes of limitations for the causes of actions pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution. If the Class Members who purchased the Class Products prior to the furthest reach-back under the statute of limitations for various damages claims, they could be barred

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

from recovery if equitable relief is not permitted under the statutes allowing equitable relief (like UCL/unjust enrichment).

- **Broader scope of Conduct**: In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of actions asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote the MultiProtect system's safety capabilities, in order to gain competitive advantage of consumers' desire for Class Products that provide comprehensive safety protection. The UCL also creates a cause of action for violations of law – such as statutory or regulatory requirements and court orders – which allows a broader scope of conduct that may be rendered as unlawful or unfair under the UCL, wherein other causes of actions require additional elements to be entitled to damages. For example FAL requires actual or constructive knowledge of falsity.

- **Discovery has not yet commenced**: Currently, Plaintiff cannot accurately quantify the damages caused by Defendants' harm and future harm, because discovery and Plaintiff's investigation have not yet completed, rendering equitable relief necessary. For example, because discovery has yet to commence, the following remain unknown: the scope of the class, the identities of its members, their respective purchases, prices of past and future sales, quantities of future sales. Therefore, at this time, no adequate remedy is available to Plaintiff and the Class, entitling them to equitable relief.

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Class Action Complaint

## COUNT FOUR

## FRAUD BY OMISSION/CONCEALMENT

### (Common Law)

### (On behalf of the Nationwide Class, in the Alternative, the Idaho Class)

157. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

158. Plaintiff brings this cause of action against Defendants on behalf of herself and the Nationwide Class or, in the alternative, on behalf of the Idaho Class.

159. Defendants made material omissions concerning a presently existing fact in that Defendants did not fully and truthfully disclose to its customers that the MultiProtect system cannot detect or prevent thermal events caused by failure of internal components, which was not readily discoverable by consumers prior to purchase or through visual inspection. These facts were material because they directly impact the safety and central functionality of the Class Products.

160. Defendants had a duty to disclose these omitted material facts because:

   a) Defendants were in a superior position to know the true state of facts about the limitations of the MultiProtect system in the Class Products

   b) Plaintiff and the Nationwide Class members could not reasonably have been expected to learn or discover that the MultiProtect system was incapable of preventing or detecting thermal events caused by failure of internal components;

   c) The limitations of the MultiProtect system concerned the safety of the Class Products; and

   d) Defendants made partial representations but suppressed material facts regarding MultiProtect system's capabilities

161. Defendants were in exclusive control of the material facts regarding the MultiProtect system's technical limitations, and such facts were not known to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

40

Plaintiff or the Nationwide Class members. Defendants also possessed exclusive knowledge of the MultiProtect system's inability to detect or prevent thermal events caused by failure of internal components.

162.  Defendants omitted and/or concealed these material facts, in whole or in part, with the intent to induce Plaintiff and the Nationwide Class members to purchase the Class Products at a higher price, which did not match the Class Products' true value given their safety limitations.

163.  Plaintiff and the Nationwide Class members were unaware of these omitted material facts and would not have purchased the Class Products if they had known of the concealed and/or suppressed facts regarding the MultiProtect system's limitations. The actions of Plaintiff and the Nationwide Class members were justified.

164.  Plaintiff and the Nationwide Class members reasonably believed that the Class Products were suitable for safe use—as represented by Anker—and thus relied on Anker's failure to disclose material information about the MultiProtect system's inability to detect or prevent thermal events caused by failure of internal components and suffered harm as a result.

165.  Plaintiff and the Nationwide Class would not have purchased of the Class Products or would have paid substantially less for them  had they known of the safety limitations of the MultiProtect system and that the Class Products do not conform to Defendants' advertising and marketing.

166.  As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and members of the Nationwide Class suffered actual damages, including the price premium they paid for the Class Products or, alternatively, loss of the benefit of their bargain for their purchases.

167.  Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiff and the Nationwide Class members in order to enrich Defendants. Defendants'

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT FIVE

### FRAUD BY MISREPRESENTATION

### (Common Law)

### (On behalf of the Nationwide Class, in the Alternative, the Idaho Class)

168. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

169. Plaintiff brings this cause of action against Defendants on behalf of herself and the Nationwide Class or, in the alternative, on behalf of the Idaho Class.

170. Defendants falsely represented to Plaintiff and the Class that the MultiProtect system in the Class Products provided "complete safety" and comprehensive protection against fires, explosions, and thermal events.

171. Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase the Class Products at premium prices.

172. Defendants knew or should have known that their representations about the MultiProtect system were false in that the system cannot detect or prevent thermal events caused by failure of internal components. Defendants knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

173. Plaintiff and the Nationwide Class did in fact rely on these misrepresentations and purchased the Class Products to their detriment. Given the deceptive manner in which Defendants advertised, marketed, represented, and otherwise promoted the MultiProtect system, Plaintiff's and the Class's reliance on Defendants' misrepresentations were justifiable.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

174.  Plaintiff and the Nationwide Class would not have purchased of the Class Products or would have paid substantially less for them  had they known of the safety limitations of the MultiProtect system and that the Class Products do not conform to Defendants' advertising and marketing.

175. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and members of the Nationwide Class suffered actual damages, including the price premium they paid for the Class Products or, alternatively, loss of the benefit of their bargain for their purchases.

## COUNT SIX

### UNJUST ENRICHMENT

### (Common Law)

### (On behalf of the Nationwide Class, in the Alternative, the Idaho Class)

176. Plaintiff realleges and reincorporates by reference the allegations contained in all preceding paragraphs, as though fully set forth herein.

177. Plaintiff brings this cause of action against Defendants on behalf of herself and members of the of the Nationwide Class or, in the alternative, the Idaho Class.

178.  Plaintiff and Class members conferred monetary benefits on Defendants by purchasing the Class Products. Defendants' profits are funded entirely from their generated revenues – payments made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendants' false representations about the MultiProtect system's safety capabilities and omissions regarding its limitations.

179. Defendants knew that Plaintiff and the Class conferred a benefit which Defendants accepted, and through which, Defendants were unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Class Products. Retention of those monies under these circumstances is unjust and

inequitable because Defendants failed to disclose that contrary to its representations, the MultiProtect system cannot detect or prevent thermal events caused by failure of internal components, and instead the Class Products posed serious safety risks including fires and explosions, which pose serious harm to consumers and property.

180. Defendants' conduct, representations, and omissions caused injuries to Plaintiff and Class members because they would not have purchased the Class Products if the true facts about the MultiProtect system's limitations were known.

181. Defendants enriched themselves by saving the costs they reasonably should have spent on ensuring that the MultiProtect system actually provided the comprehensive safety protection advertised, or alternatively, by charging premium prices for safety features that do not perform as represented.

182. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants have been unjustly enriched in an amount to be determined at trial.

**COUNT SEVEN**

**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**

**(Idaho Code § 48-601, *Et Seq.*)**

**(On behalf of the Idaho Class)**

183. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

184. Plaintiff brings this cause of action against Defendants on her behalf and on behalf of the members of the Idaho Class.

185. Defendants, Plaintiff, and the Idaho Class members are "persons" within the meaning of Idaho Code § 48-602(1).

186. Defendants are engaged in "trade" or "commerce" within the meaning of Idaho Code § 48-602(2). The Idaho Consumer Protection Act ("Idaho CPA") makes unlawful misleading, false, or deceptive acts.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

187.  In the course of its business, Defendants, through their agents, employees and/or subsidiaries, violated the Idaho CPA.

188.  Defendants concealed the fact that Class Products equipped with the MultiProtect system cannot detect or prevent thermal events resulting from failure of the internal components of the Class Products, such as the battery cells, while simultaneously making false representations that the MultiProtect system provided "complete safety" and comprehensive protection against fires and explosions.

189.  Defendants violated the Idaho CPA by, at minimum, representing that the Class Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Products equipped with MultiProtect are of a particular standard and quality when they are not; advertising the Class Products with the intent not to sell them as advertised; and omitting material facts in describing the Class Products' safety limitations.

190.  Defendants intentionally and knowingly misrepresented material facts regarding the Class Products' safety capabilities with the intent to mislead the Idaho Plaintiff and the Class.

191.  Defendants knew or should have known that its conduct violated the Idaho CPA.

192.  Defendants' fraudulent concealment of the true limitations of the MultiProtect system in the Class Products were material to the Idaho Plaintiff and Class members.

193.  Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

194.  Defendants had an ongoing duty to their customers to refrain from unfair and deceptive practices under the Idaho CPA. All owners of Class Products suffered ascertainable loss in the form of the diminished value of their Class Products as a

result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

195. As a direct and proximate result of Defendants' violations of the Idaho CPA, Plaintiff and the Idaho Class suffered actual damages, including the price premium they paid for the Class Products or, alternatively, loss of the benefit of their bargain for their purchases.

196. Pursuant to Idaho Code § 48-608, Plaintiff seeks to recover actual damages in an amount to be determined at trial; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; restitution; punitive damages; attorneys' fees and costs; and any other relief available under the Idaho CPA that the Court deems just and proper.

## COUNT EIGHT

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Idaho Code §§ 28-2-314)
### (On behalf of the Idaho Sub Class)

197. Plaintiff realleges and reincorporates by reference the allegations contained in all preceding paragraphs, as though fully set forth herein.

198. Plaintiff brings this cause of action against Defendants on behalf of herself and the Idaho Class.

199. At all times relevant herein, Defendants were merchants with respect to the Class Products within the meaning of Idaho Code § 28-2-104(1).

200. The Class Products sold by Defendants to Plaintiff and the Idaho Class were "goods" within the meaning of Idaho Code § 28-2-105(1).

201. A warranty that the Class Products were merchantable was implied by law pursuant to Idaho Code § 28-2-314.

202. To be merchantable under Idaho Code § 28-2-314(2), goods must, among other things: (a) pass without objection in the trade under the contract description; (b)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

be fit for the ordinary purposes for which such goods are used; (c) be adequately contained, packaged, and labeled as the agreement may require; and (d) conform to the promises or affirmations of fact made on the container or label.

203. The Class Products equipped with the MultiProtect system failed to satisfy the implied warranty of merchantability because they: a) Are not fit for the ordinary purposes for which portable battery chargers are used, namely safe charging of electronic devices, because the MultiProtect system cannot detect or prevent thermal events caused by failure of internal components; b) Are not adequately labeled because the labeling fails to disclose that the MultiProtect system cannot prevent or detect thermal events resulting from failure of the internal components of the Class Products; and c) Do not conform to the promises and affirmations made on the container and labeling, which represent that the MultiProtect system provides "complete safety" and comprehensive protection against fires and explosions.

204. Defendants were on notice of the Class Products' failure to conform to the implied warranty of merchantability due to: (a) the multiple recalls of Power Banks equipped with MultiProtect systems; (b) consumer complaints regarding fires and explosions; (c) Defendants' own internal knowledge of the MultiProtect system's technical limitations; and (d) the incident involving Plaintiff's Power Bank explosion and fire.

205. Plaintiff and the Idaho Class were not aware of Class Products' failure to conform to the implied warranty of merchantability at the time of purchase.

206. Plaintiff and the Idaho Class have been damaged as a direct and proximate result of Defendants' breach of the implied warranty of merchantability.

207. Pursuant to Idaho Code § 28-2-714, Plaintiff and the Idaho Class are entitled to damages measured by the difference between the value of Class Products as accepted and the value they would have had if they had been as warranted.

208. Plaintiff and the Idaho Class seek actual damages to the extent permitted

1  by law, and such other relief as the Court deems just and proper.

2  ### IX.  PRAYER FOR RELIEF

3  WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

4  pray for judgment against Defendants as follows:

5      a.  For an order certifying this action as a class action, appointing Plaintiff as

6      the Class Representative, and appointing Plaintiff's Counsel as Class

7      Counsel;

8      b.  For an order declaring that Defendants' conduct violates the statutes and

9      laws referenced herein consistent with applicable law and pursuant to

10      only those causes of action so permitted;

11      c.  For an order requiring Defendants to change their business practices to

12      prevent or mitigate the risk of the consumer deception and violations of

13      law outlined herein. This includes, for example, orders that Defendants

14      immediately cease and desist from selling the unlawful Products in

15      violation of law; that enjoin Defendants from continuing to market,

16      advertise, distribute, and sell the Products in the unlawful manner

17      described herein; that require Defendants to engage in an affirmative

18      advertising campaign to dispel the public misperception of the Products

19      resulting from Defendants' unlawful conduct; and/or that require

20      Defendants to take all further and just corrective action, consistent with

21      applicable law and pursuant to only those causes of action so permitted;

22      d.  For an order awarding monetary compensation in the form of damages,

23      restitution, and/or disgorgement to Plaintiff and the Class requested

24      herein, consistent with applicable law and pursuant to only those causes

25      of action so permitted;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

e.  For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f.  For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g.  For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h.  For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 13, 2025                    **CLARKSON LAW FIRM, P.C.**

_/s/ Yana Hart_
Yana Hart
Mark I. Richards
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Email: yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Class Action Complaint