UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:25-cv-01483-SSS-SPx | Date | December 16, 2025 |
|---|---|---|---|
| Title | *Megan Iudice v. Anker Innovations Limited et al.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DKT. NO. 24]**

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Class Complaint. [Dkt. No. 24, "Motion"]. The Motion is fully briefed and ripe for review. [Dkt. 24, "Motion"; Dkt. No. 27, Opposition or "Opp"; Dkt. No. 28, "Reply"]. The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

I.     FACTUAL AND LEGAL BACKGROUND

The Court recites the facts as alleged in the First Amended Class Complaint. [*See* Dkt. No. 21, "First Amended Class Complaint" or "FACC"].

Defendant Anker Innovations Ltd. ("Anker") is a Hong Kong company that designs and manufactures portable chargers and power banks. [FACC at 4]. Among the products Anker develops are lithium-ion portable chargers and power banks that use its "MultiProtect" technology. [*Id.*]. MultiProtect is an external circuit protection system, which monitors electrical parameters for a device. [*Id/* at 4–5]. Anker advertises MultiProtect as a technology that provides "complete safety" and "complete protection" against lithium-ion battery fires, which has

become a "leading cause of property damage and personal injury in recent years." [*Id.*].

Defendant Fantasia Trading LLC ("Fantasia") is a Delaware company doing business in California. [FACC at 16]. Fantasia is Anker's exclusive distributor in the United States, and is also responsible for designing, manufacturing, selling, advertising, and distributing these products. [*Id.* at 6]. Fantasia maintains Anker's website for online sales and directs nationwide marketing and advertising campaigns from California. [*Id.*].

Plaintiff Megan Iudice purchased an Anker PowerCore portable battery charger ("the Power Bank") in September of 2022. [FACC at 8]. Prior to purchasing the Power Bank, Iudice visited Anker's official website to review its features, benefits, specifications, and safety attributes. [*Id.* at 8]. Iudice states she relied on the website's express representations and warranties regarding MultiProtect and its safety benefits. [*Id.*].

On January 16, 2025, Iudice was charging the Power Bank in her bathroom under normal operating conditions when it caught fire and caused substantial property damages in Iudice's bathroom. [FACC at 8]. The fire caused by the Power Bank emitted flames and toxic smoke, which Iudice inhaled while attempting to put out the fire. [*Id.*]. Plaintiff needed emergency medical care for smoke inhalation. [*Id.*].

According to the FACC, Iudice's situation is common. Anker has allegedly manufactured defective lithium-ion batteries and issued recalls for its products on four separate occasions between 2023 and 2025. [FACC at 27–28]. The FACC alleges that Anker continues to "falsely and misleadingly advertise MultiProtect as a comprehensive safeguard against thermal events and fires" despite its recalls and incidents like Iudice's. [*Id.* at 29].

Plaintiff Iudice filed this class action suit against Defendants in this Court on June 13, 2025, alleging violations of California and Idaho laws and other common law causes of action. [*See generally* Dkt. No. 1, "Complaint"]. On September 5, 2025, Iudice amended the Complaint to include four additional named plaintiffs. [*See* FACC at 10–15]. These named plaintiffs—Stephen Lee, Sean Phillips, Derek Schuette, and Hari Bathala—bring claims under California and Washington state law as well as common law claims. [*Id.* at 54–56, 58–59].

Plaintiffs Lee, Schuette, and Bathala each purchased a Power Bank like Iudice's. [FACC at 10, 13–15]. They also visited Anker's website prior to

purchase and relied on the website's statements regarding the Power Bank's features, specifications, and benefits. [*Id.*]. Although these Plaintiff's Power Banks did not cause a fire as Iudice's did, each of these Plaintiffs experienced "repeated overheating incidents." [*Id.* at 11, 13, 15]. Lee, Schuette, and Bathala allege that they would not have purchased the Power Bank had they known of its safety deficiencies. [*Id.*].

Plaintiff Phillips also purchased a Power Bank in 2023. [FAC at 11]. Phillips selected and purchased the Power Bank "specifically . . . based on Anker's reputation for safety and quality as promoted through its MultiProtect system advertising." [*Id.*]. Phillips alleges that had he been aware of MultiProtect's inability to provide "complete protection" against battery overheating and thermal events, he would not have purchased the Power Bank at all, or at the price at which he purchased it. [*Id.*]. Notably, the FACC does not include any allegations regarding Phillips' experience with any overheating or lithium-ion battery fires from the Power Bank.

Defendant Fantasia filed this Motion to Dismiss on October 3, 2025, arguing that Plaintiffs lack standing to bring certain claims and fail to state a claim for all causes of action. [*See generally* Motion]. At this time, Defendant Anker has neither been served nor appeared in this action. [*See* Motion at 9 n.1].

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## II.     LEGAL STANDARD

Defendant seeks to dismiss claims in the FACC under Rule 12(b)(1) for lack of standing, failure to claim under Rule 12(b)(6) for failure to state a claim, and failure to plead fraud with specificity under Rule 9(b). [*See generally* Motion].

### A.    Rule 12(b)(1)

A motion to dismiss under 12(b)(1) challenges whether a plaintiff fails to properly plead subject matter jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1). Article III of the Constitution restricts federal courts' subject-matter jurisdiction to "cases and controversies." *GTE Cal., Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994). A "case or controversy" exists only if a plaintiff has standing to bring the claim. *Nelson v. NASA*, 530 F.3d 865, 873 (9th Cir. 2008). "Because standing . . . pertain[s] to federal courts' subject matter jurisdiction, [it is] properly

raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

To have Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Although plaintiffs bear the burden of establishing standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

### B. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In analyzing a motion to dismiss, a court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). A court need not accept, however, "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents, documents incorporated by reference, or matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was not made, unless amendment would be futile. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

### C. Rule 9(b)

Allegations of "fraud or mistake must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies to claims "grounded in fraud" or that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Unlike allegations pertaining to state of mind, allegations of "fraud must be accompanied by the who, what, when, where, and how" of the alleged fraudulent activity. *Id.* at 1106 (citation and internal quotation marks omitted). Allegations subject to Rule 9(b)'s heightened pleading requirement must also "'set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Rule 9(b), therefore, requires that allegations of fraud are sufficiently specific such that it gives defendants "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (citation and internal quotation marks omitted) (alteration in original).

"To avoid dismissal for inadequacy under Rule 9(b), [a] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation and internal quotation marks omitted).

## III. DISCUSSION

The Motion seeks to dismiss claims for lack of subject matter jurisdiction, failure to plead adequate facts, and failure to state a claim. [*See generally* Motion]. For failure to plead adequate facts, Defendant asserts that all claims in the FACC sound in fraud and are subject to Rule 9(b)'s heightened pleading standard. [*Id.* at 12–16]. In arguing failure to state a claim, Defendant challenges certain Plaintiffs' standing to bring California state claims. [*Id.* at 16–19]. Finally, Defendant raises other deficiencies in the FACC that warrant dismissal of common law claims and Idaho state law claims. [*Id.* at 20–24].

Because Defendant's argument regarding standing affects the Court's subject matter jurisdiction, the Court examines these issues first. *Bates v. United*

*Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (requiring courts to ensure subject matter jurisdiction prior to considering the merits).

### A. Article III Standing and Injury-in-Fact

As a preliminary matter, Defendant suggests that all named Plaintiffs except Plaintiff Iudice lack Article III injury-in-fact because the Power Banks they purchased merely overheated, and fail to explain how occasional overheating "put[s] them at risk or hurt the performance of the products." [Motion at 26–27]. Plaintiffs respond that Defendant's challenge to injury-in-fact is unavailing because those individuals "allege a uniform economic injury: payment of a price premium attributable to the false promise of 'complete safety.'" [Opp. at 11].

Article III demands that plaintiffs plead facts to demonstrate a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). "[A] plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted).

The Court interprets the Opposition and the FACC as positing its theory of economic injury under a benefit of the bargain theory. In other words, Plaintiffs did not receive the benefit of the bargain when it paid the purchase price due to the later-discovered overheating tendencies of the Power Banks. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020) (describing the benefit of the bargain theory as one in which "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but perceived a product worth less than that value").

The Ninth Circuit has stated that a plaintiff's allegation that she would not have spent money absent a defendant's actions is a "quintessential injury-in-fact." *See Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)). At the pleadings stage, the Court only evaluates whether Plaintiffs have plausibly alleged that Defendant's actions in the form of making representations concerning the Power Bank's safety or protective features in making their purchase. Although the FACC does not allege that the Power Banks necessarily put these Plaintiffs at risk or affected the Power Banks' performance, it does contain allegations that Defendant Fantasia created, authorized and controlled the advertising over the Power Banks, made representations regarding the "complete safety" and "complete protection"

provided by MultiProtect, and that Plaintiffs relied on such representations when purchasing the Power Banks at the purchase price. [FACC at 17, 22].

Except for Plaintiff Phillips, each of the other Plaintiffs' alleged injury-in-fact is not speculative, as they each experienced overheating that ran contrary to representations regarding MultiProtect's ability to provide "complete protection while charging" with "safeguards against overheating." [FACC at 9, 11, 13–14, 22]. Construing the complaint in Plaintiffs' favor and granting every favorable inference, the FACC sufficiently pleads injury-in-fact for all named Plaintiffs except Phillips.

Defendant also argues that Plaintiffs lack standing to assert claims based on products they did not purchase. [Motion at 25]. The FACC bases its claims upon the named Plaintiffs' purchase of "Class Products" defined as "lithium-ion portable chargers and power banks" with "'MultiProtect technology.'" [FACC at 4, 37, 40, 43, 52, 54–56, 58]. Because each named Plaintiff did indeed purchase a Power Bank falling within that definition, the Court finds that each Plaintiff has Article III standing to assert their respective claims. To the extent Defendant seeks to challenge the propriety of any Plaintiff's ability to serve as a class representative, the Court finds such analysis to be appropriate when Plaintiffs file a motion for class certification. Because Plaintiffs have not yet filed such a motion, the Court declines to discuss the Rule 23 prerequisites.

The Court **DENIES** the Rule 12(b)(1) Motion to Dismiss for all Plaintiffs except for Plaintiff Phillips. As to Plaintiff Phillips, the Court **GRANTS** the Motion. All claims raised by Plaintiff Phillips are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

### B. Standing to Bring California State Law Claims

Based on the Court's review of the Motion and Opposition, the parties appear to confuse Article III standing and statutory standing. The distinction between these doctrines is important. "[L]ack of statutory standing requires dismissal for failure to state a claim" under Federal Rule of Civil Procedure 12(b)(6), while "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Defendant's argument does not seem to challenge whether Plaintiffs Iudice and Bathala were exposed to unlawful practices or were injured. Instead, Defendant argues that the location of their alleged injury prevents them from

bringing California claims. Defendant argues that courts in the Ninth Circuit have "overwhelmingly ruled" that plaintiffs like Iudice and Bathala, neither of whom live in California nor made their purchases in California, from asserting claims under California law. [Motion at 17]. Following the logic of these cases, Defendant posits that Iudice and Bathala lack "standing" to bring these claims.

The cases upon which Defendant relies, however, dismiss claims for lack of Article III standing before the class certification stage. [Motion at 16–17]. Such reference conflates Article III standing with statutory standing.

The Court clarifies the difference between the arguments when considering Article III standing and statutory standing as applied to Plaintiffs.

### 1. Article III Standing

To argue that Iudice and Bathala lack standing to assert these California claims, Defendant cites exclusively to cases where "no named plaintiff was alleged to reside or have purchased [the product in question]." *Hadi v. Toyota Motor Corp.*, No. 2:23-CV-09613-JLS-SSC, 2025 WL 841804 at *2 (C.D. Cal. Jan. 6, 2025).

Defendant's argument appears to question Iudice and Bathala's suitability to serve as class representatives for these claims due to the alleged lack of standing. To the extent that Defendant seeks to challenge whether Iudice and Bathala are proper class representatives for these claims, the Court declines to rule absent a motion for class certification. Instead, the Court interprets Defendant's argument to suggest that Iudice and Bathala's alleged lack of *statutory*, not Article III, standing requires dismissal of California state law claims as to them specifically.[1]

In any event, Iudice and Bathala's inability to bring these claims for lack of Article III standing do not warrant dismissal of the California law claims because Lee and Schuette are also named plaintiffs. The Ninth Circuit, like many other circuits, have adopted the class certification approach to Article III standing, which provides that "once [a] named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citing NEWBERG ON CLASS ACTIONS § 2:6).

---

[1] As discussed in Part A., all named Plaintiffs except Phillips satisfy Article III standing.

On Defendant's own admission, Plaintiffs Lee and Schuette reside in California and purchased their Power Banks from Amazon. [Motion at 10]. Moreover, the Motion does not appear to challenge Plaintiffs Lee and Schuette's statutory standing. Because there are at least two named plaintiffs who possess Article III standing, the Court **DENIES** the Motion to Dismiss for lack of Article III standing.

### 2. Statutory Standing

The FACC alleges claims under the following California state laws: (1) the Consumer Legal Remedies Act ("CLRA"); (2) the California Unfair Competition Law ("UCL"); and California False Advertising Law ("FAL"). [FACC at 37–51]. These statutes each impose additional statutory requirements for plaintiffs to show standing.

To have standing to bring a CLRA claim, a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT&T Mobility, LLC*, 196 Cal.App.4th 1545, 1556 (2011) (citation modified). The UCL and FAL require a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

There is a geographical limitation to the availability of these claims. The California Court of Appeal declined to expansively construe the UCL "to encompass claims for injuries suffered by non-California residents caused by conduct occurring outside of California." *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224 (1999). *See also In re iPhone 4S Consumer Litig.*, No. 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (confirming a similar principle for FAL and CLRA claims as well). This limit, however, does not categorically bar out-of-state plaintiffs from bringing California statutory claims.

As Plaintiffs point out, CLRA, UCL, and FAL claims "may be invoked by out-of-state parties" when they allege harm from "wrongful conduct occurring in California." *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013). In evaluating whether wrongful conduct occurred in California, courts look to where the defendant does business, has its principal offices, and where defendant's decisions were made. *See Zakikhani v.*

*Hyundai Motor Co.*, No. 820CV01584SBJDEX, 2022 WL 1740034 at *4 (C.D. Cal. Jan. 25, 2022).

For Plaintiffs Iudice and Bathala specifically, the FACC alleges that they viewed advertisements and marketing materials" prior to purchase on the product packaging, Anker's website, Facebook, and/or Instagram which made representations regarding MultiProtect's safety features. [FACC at 9, 15]. According to the FACC, Defendant Fantasia is "the entity that created, authorized, and controlled the use of the marketing, advertising, and branding of the Class Products in the United States." [*Id.* at 16]. The FACC also states that Fantasia has its principal place of business and headquarters in California. [*Id.*].

Accepting the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the FACC adequately pleads that Defendant's wrongful conduct in California caused injury to these out-of-state individuals.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' claims for lack of statutory standing.

### C. Pleading Standards Under Rule 9(b)

The Motion further argues that all claims in the FACC sound in fraud because they are "premised on the same 'unified course of fraudulent conduct.'" [Motion at 12]. Invoking the heightened pleading standard of Rule 9(b), Defendant suggests that the FACC does not allege with particularity what the representations were, where they were located, when Plaintiffs saw them, and why those representations were false. [*Id.* at 13]. Rather, Defendant asserts the FACC relies on "vague, generalized representations" about MultiProtect, with no indication of when or where Plaintiffs found or reviewed the representations. [*Id.* at 13–14]. The Motion additionally states that Plaintiffs fail to explain why the "unspecified number of incidents of alleged 'overheating'" render the alleged representations false. [*Id.* at 14–15].

The parties agree that Plaintiffs must allege the "who, what, when, where, and how of the misconduct" to satisfy Rule 9(b). [Motion at 12; Opp. at 18]. Yet, Plaintiffs respond that the FACC adequately alleges the claims of fraud, but does not contest that Rule 9(b)'s pleading standard applies to all claims in the FACC. [Opp. at 14–19]. The Opposition notes that courts find Rule 9(b)'s standard has been met where plaintiffs allege that they consulted a defendant's website, provided screenshots of the parts of the website containing the representations they

reviewed, and relied on those representations. [Opp. at 18 (citing *Mosher-Clark v. Gravity Defyer Med. Tech Corp.*, 691 F.Supp.3d 1113, 1119 (N.D. Cal. 2023)].

To be sure, Rule 9(b)'s heightened pleading standard applies to all claims alleged in the FACC. *See Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F.Supp.3d 863 (N.D. Cal. 2023) (applying Rule 9(b) to UCL, CLRA, FAL claims as well as fraud by omission or concealment and unjust enrichment); *Harju v. Johnson & Johnson*, No. C20-6258 BHS-JRC, 2021 WL 3929232 (W.D. Wash. Sept. 2, 2021) (indicating the same for Washington Consumer Protection Act claims); *Tuttle v. Treasure Valley Marine, Inc.*, No. 1:15-CV-00314-BLW, 2016 WL 3198230 (D. Idaho June 8, 2016) (same for Idaho Consumer Protection Act).

The Court finds the FACC plausibly alleges "who, what, when, where, and how" of the purported fraudulent conduct. For one, Plaintiffs allege that Defendant made a false and misleading claim; the claim at issue is that MultiProtect provides "complete safety" and "complete protection" against thermal events. [FACC at 4, 22–23]. Specifically, the representations on Anker and its authorized retailers' websites stated that "features like the MultiProtect safety system, which includes temperature control, foreign object detection, and radiation shielding, **you can charge your devices confidently, knowing they are protected from overcharging, overheating, and more**." [*Id.* at 23 (emphasis in original)].

Plaintiffs allege that these claims were made on Defendant's marketing materials, all of which were viewed prior to each Plaintiff's purchase date as specified. [FACC at 8, 10, 13, 14, 16–17, 22]. The FACC also includes images of the packaging and screenshots of representations on Anker's website on which the Plaintiffs relied when purchasing the Power Banks. [*Id.* at 24–26]. Together, these allegations establish a timeframe ranging from September 6, 2022 to February 23, 2025, during which Plaintiffs and putative class members viewed specific representations regarding MultiProtect's safety features that would protect against lithium-ion battery fires and overheating and ultimately purchased Power Banks relying on those statements.

Importantly, the FACC alleges that MultiProtect in fact "cannot detect, much less prevent, thermal events," and that Plaintiffs did not know or have reason to know that MultiProtect could not detect or prevent thermal events. [FACC at 4].

Considered together, these allegations meet Rule 9(b)'s pleading standard. *See Grimm v. APN, Inc.*, 2017 WL 6060624, at *6 (C.D. Cal. Nov. 20, 2017) (finding plaintiff's allegations satisfied Rule 9(b) with respect to plaintiff's UCL,

CLRA, and FAL claims where plaintiff alleged the specific misrepresentations made by defendant; the terms on defendant's product's packaging that were misleading; why those terms were misleading; plaintiff's reliance on the alleged misrepresentations; and when plaintiff purchased defendant's product).

The Court **DENIES** Defendant's Motion to Dismiss for failure to meet Rule 9(b)'s pleading standard.

### D.     Legal Sufficiency of the Remaining Claims

The only remaining issues to address in the Motion are Defendant's following arguments: (1) the FACC does not state a claim under the Idaho Consumer Protection Act; (2) the common-law claims do not allege which state law applies, or alternatively, are duplicative of California law claims; and (3) the equitable claims must be dismissed because Plaintiffs have an adequate remedy at law. [*See* Motion at 20–24]. The Court considers each in turn:

#### 1.     Idaho Consumer Protection Act

The Idaho Consumer Protection Act ("ICPA") "protect[s] both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protection." Idaho Code § 48-601. Further, the ICPA declares unlawful "[e]ngaging in any unconscionable method, act or practice in the conduct of trade or commerce," among several other types of conduct. Idaho Code § 48-603(18).

Plaintiffs argue that Idaho law does not specify that the contract must be one entered into by the plaintiff and defendant directly. [Opp. at 24]. However, more recent authority from the Supreme Court of Idaho articulated that to bring an ICPA claim, "the *aggrieved party* must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively. *Taylor v. McNichols*, 149 Idaho 826, 846 (2010) (emphasis added); *see also* § 48-601(1). *See Haskin v. Glass*, 102 Idaho 785, 788 (1982) ("a claim under the ICPA must be based upon a contract"). Defendant reiterates this requirement in the Reply. [Reply at 9].

Absent any allegations that there existed a contract between Defendant and any of the Plaintiffs, Plaintiffs cannot bring an ICPA claim.

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss as to the ICPA claim. Plaintiffs are provided with **LEAVE TO AMEND** any deficiencies in the FACC.

### 2. Common Law Claims

First, as to the unjust enrichment claim, the Motion states that California law prevents Plaintiffs from "assert[ing] unjust enrichment claims that are merely duplicative of statutory or tort claims." [Motion at 21 (citing *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070 (N.D. Cal. 2011))].

Under California law, unjust enrichment "is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004)(citations omitted). Therefore, a claim for unjust enrichment "is synonymous with [a request for] restitution," *McBride*, 123 Cal. App. 4th at 387.

The FACC requests restitution under the FAL, UCL, and ICPA. [FACC at 41, 48, 58]. Under the FAL and UCL, Plaintiffs would only be able to recover damages in the form of restitution. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) (limiting remedies in a UCL or FAL action to injunctive relief and restitution." Because Plaintiffs already request the FACC's Prayer for Relief, Plaintiff's claim for unjust enrichment is entirely duplicative.

The Court **GRANTS** Defendant's Motion as to Plaintiffs' unjust enrichment claim. The unjust enrichment claim is **DISMISSED WITH PREJUDICE**.

Regarding the remaining common law claims, Defendant primarily argues that failure to allege which state law governs the claims can be grounds for dismissal. [Motion at 20]. Plaintiffs respond by suggesting California law would apply by default to the common law claims of fraud. [Opp. at 25].

Indeed, district courts have held that "failure to allege which state law governs a common law claim is grounds for dismissal." *Kavehrad v. Vizio, Inc.*, No. 821CV01868JLSDFM, 2022 WL 16859975 at *3(C.D. Cal. Aug. 11, 2022) (collecting authorities). Even if the Court may resolve the choice-of-law question as to which state law governs Plaintiffs' claims by finding that California law applies, this does not change the FACC's failure to plead that California state law should apply.

Because this particular deficiency can be cured by amendment, the Court **GRANTS** Defendant's Motion as to the common law fraud claims and provides Plaintiffs **LEAVE TO AMEND**.

### 3. Equitable Claims

Finally, Defendant argues Plaintiffs' various claims for equitable monetary relief under California, Idaho, Washington laws and common law fail because they do not allege the lack of an adequate remedy at law. [MTD at 22].

The Ninth Circuit held in *Sonner v. Premier Nutrition Corporation* that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). Moreover, when acting in equity, a court "should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citation modified). Accordingly, *Sonner* held that a federal plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner*, 971 F.3d at 844.

Nevertheless, judicial districts within the Ninth Circuit differ on what *Sonner* requires from a plaintiff as a matter of pleading. *See Chebul v. Tuft & Needle, LLC*, No. 2:24-CV-02707-JLS-MAR, 2024 WL 5257021 at *4 (C.D. Cal. Oct. 9, 2024); *Haas v. Travelex Ins. Servs. Inc.*, 555 F.Supp.3d 970 (C.D. Cal. 2021). *See also Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022).

In line with the Court's previous ruling in *Haas*, litigants may assert alternative or inconsistent theories of recovery on legal or equitable grounds at the pleadings stage. *Haas*, 555 F.Supp.3d at 980.

The FACC asserts two forms of equitable monetary relief: restitution under the various statutes and unjust enrichment. [*See e.g.*, FACC at 41, 48, 55, 58]. Plaintiffs' request for restitution under statutes like the UCL and FAL and unjust enrichment as remedies in the alternative to legal remedies under CLRA is sufficient and permissible at the pleading stage. The issue of Plaintiffs' entitlement to seek these equitable remedies may be revisited at a later stage.

The Court, therefore, **DENIES** the Motion as to the equitable claims.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion [Dkt. No. 24] as follows:

- The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Rule 12(b)(1) Motion to Dismiss. All claims brought by Plaintiff Phillips are **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**;

- The Court **DENIES** Defendant's Motion to Dismiss the California State Law claims for lack of statutory standing;

- The Court **DENIES** Defendant's Motion to Dismiss for Failure to meet Rule 9(b)'s pleading standard;

- The Court **GRANTS** Defendant's Rule 12(b)(6) Motion to Dismiss as to the ICPA claim and common law fraud claims. Plaintiffs are provided with **LEAVE TO AMEND**;

- The Court **GRANTS** Defendant's Rule 12(b)(6) Motion to Dismiss as to the unjust enrichment claim. This claim is **DISMISSED WITH PREJUDICE**; and

- The Court **DENIES** Defendant's Rule 12(b)(6) Motion to Dismiss as to all other claims.

Plaintiffs are **ORDERED** to file an amended complaint by **January 9, 2026,** as to the surviving claims. Plaintiffs are also **ORDERED** to email a red-lined version of the amended complaint to SSS_chambers@cacd.uscourts.gov on the date it is filed. If an amended complaint is filed, Defendant must either file a motion to dismiss or responsive pleading within 14 days after being served with the amended complaint.

**IT IS SO ORDERED.**